case number 13-5029. Mr. Robinson, I understand that you want to reserve five minutes for rebuttal, is that correct? Mr. Robinson, did I pronounce your client's name correctly? Is it Tembenis? Oh, I'm sorry. I'm sorry. Mr. Pepper. That's correct. Tembenis. Tembenis. Okay. All right. Mr. Robinson, do you want to begin? Good morning, Your Honors. My name is Michael Robinson. I represent the Secretary of HHS. The question in this case is whether the award of lost future earnings for a child who has died as a result of a vaccine-related injury is compatible with Section 15A3B of the Vaccine Act, and the answer is no. The Act provides compensation for future earnings where the petitioner who suffered the vaccine-related injury is alive at the time of judgment, but in that instance, there is no death benefit. If the petitioner dies of a vaccine-related injury before judgment, the petitioner is entitled to a death benefit but not the lost future earnings. But you would agree that the statute doesn't actually say that. I mean, you're asking us to interpret the statute. We are asking the Court to interpret the statute, and the language of the statute supports, I think, the Secretary's position much better than it does the position of the petitioner in this case. But it would have been easier if they had spelled out that these are alternative recoveries. Correct? Your Honor, yes, it would have been easier if it had. It is interesting that this is the first time. Are they truly alternative recoveries or the fact that you simply don't have eligibility for future lost earnings unless you survive the judgment? It's not either or. I mean, could someone who has deceased, say in this case, come in and say, well, I'd really rather have the lost future earnings because there are more than 250,000, right? No, Your Honor, it's not either or in that sense. Well, that's what I meant. If the person is deceased, then what they are entitled to. Your position is that in the event of a claimant who is in the state of a deceased and the deceased has gone away at the time of the judgments entered, this simply doesn't have the qualifications. It's ineligible. One way of looking at it would be ineligible. Ineligible to receive anything other than the death benefit in that circumstance. Well, take someone, for example, just to put the two sections of three together dealing with if your injury is before 18 or after 18. If you're injured after you're 18, right? Yes, Your Honor. And you're deceased at the time of the judgment, are you entitled to future lost earnings? If I understand the question correctly, if you are deceased at the time of and you're at past 18. I'm talking about someone who's over 18 when the injury occurs, so they're in Section A instead of Section B, right? Correct. They are not entitled to future lost earnings. They're entitled to actual lost earnings, which would be past lost earnings, correct? Those are past lost earnings. Because they're deceased, they don't have anticipated. That is correct, Your Honor. That's your interpretation of that section of the statute? Yes, Your Honor. Has that come up in case law? Well, the only other time this has come up, to my knowledge, is in the Sarver case, which did not reach the court of appeals level. It was a special master's decision. And I think that the analysis in the Sarver decision actually expresses... In Zadonucci, there was no claim for future lost earnings. No, there was no claim for future lost earnings. The issue wasn't adjudicated. It wasn't adjudicated. There was a claim for past. There was a claim for past, but it strikes me as unusual that they did not, or at least telling, that the petitioner in that case did not seek future lost earnings. But they weren't asking for it, so they would have been indicted. The problem I have with your argument is that there are different ways to get even to the result that you're seeking. But the way you make the argument would seem to pose some questions about the validity of the decision in Edgar. I mean, you're arguing that there has to be an assumption that they're going to live to age 18. And I thought that in Edgar, we made it clear that as long as they're alive at the time of judgment, that you calculated as if they would be alive at age 18. I believe that our argument is completely consistent with the approach that was taken in Edgar. Edgar says that basically if the petitioner is alive at the time of judgment, you do not consider whether that person is going to actually survive to age 18. Edgar is consistent with this court's decision in the McAllister case, which says that what you look to is what is the state of affairs, what is the record, what is the condition of the petitioner at the time of judgment. If the petitioner is alive, then you apply the reasonable anticipation of future. Would the rationale, though, in Sarver that you're now relying on, would the rationale in Sarver then permit a special master to look at, for instance, whether there are comorbidities that the victim of the injury has suffered that might make it less likely that they would make money at age 18? No, Your Honor. I think that what, combined with Edgar, what Sarver suggests is that as long as the person is alive at the time of judgment, then you use the anticipated lost earnings as a formula, and that formula just plays out. So I don't think that there would be a looking to the likely length of life of the petitioner. So the argument that's made on the other side that it really is just a, sadly, just a luck whether you're alive on the date of judgment. So if this same child had lived just a short period longer and was alive for a short period of longer, then his family would have recovered the $600,000-plus in lost future earnings and not the death benefit. Yes. I mean, I think that... So it's just a fortuity that there's a $400,000 swing. But I think that Edgar really addresses that. It says that at some point you have to draw a line in terms of what you are going to, a point at which you're going to make the decision about whether somebody is going to get... The lost earnings statute provision is arbitrary in the first place, very arbitrary. It draws a line at 18. And it says, oh, if your vaccine-related injuries occurred after you're 18, you're going to get an estimation of lost earnings, past or future, depending on the circumstances. That's key to you. So if you had gone to law school early and you were the president of the Harvard Law Review, at 18 years and one day, you're going to get a very nice, generous estimation of your earnings capacity. But if you were 17 years old, 364 days old, and same person, Harvard Law School, you don't get that benefit. I mean, isn't it true that there's an arbitrary distinction in how you calculate? I think that Congress has to draw, has to create a system that works in the majority of cases. I didn't mean arbitrary in a nasty way. I mean, if you have a reason, a logical reason for making these distinctions, they're legal. So all I'm saying is, it seems to me that the arbitrariness that the presiding judge has pointed to is consistent with and in harmony with the arbitrariness of the statute in general. That Congress had to draw these lines somewhere. Congress had to draw the lines somewhere. And if you fall on time just a little bit, it's like, you know, in a 100-meter dash, one person wins by a camera. They can't even tell who won. I'm not going to get them to concede that there's anything arbitrary in the statute. No, I mean, the government doesn't— I wouldn't characterize it as arbitrary. It doesn't cost you anything to say that. No, it doesn't. I mean, it's being honest. Yes, I'm just saying— Honesty, you know, pays in the long run. I think that what Congress is trying to do is, what is the usual typical age that people start work? And I think that that's why CHOS 18 is a reasonable beginning point. But if we look at the whole overview of this statute and the whole purpose for this, there already has been a massive tradeoff between the kinds of recoveries that could be had in a normal tort system and the kinds of very limited recoveries that are allowed here. I know you talk about repeatedly in your brief the generous death benefits, but when you think about what the family has lived through, $250,000 does not seem generous when you're talking about the loss of a child. So, I mean, given how small the numbers already are, is it insane to assume that Congress might have thought if you not only have an injured child but also have lost your child that you would be entitled to more rather than less recovery? No, Your Honor, and I think part of it is that at the time that the statute was enacted, the death benefit and the anticipated loss earnings were more in parity. They were closer. If you look at Edgar Lee, the amount of the death benefit was roughly equal to – the amount of the anticipated loss earnings was roughly equal to the death benefit. Maybe that is something that Congress needs to fix in terms of the amount of the death benefit. But if you look at the reasoning in Sarver, Sarver says that the approach here is really the way you look at wrongful death actions and survival actions. And then in a case of a child that dies before the time of judgment, you have basically a wrongful death benefit, which is the death benefit that's provided by the statute. And survival actions typically allow for incurred expenses, but you don't have future anticipated losses in those circumstances. Can I ask – does the government have a position on the question, I guess, addressed a long time ago in then-Judge Breyer's Schaeffer case and more recently in the Oregon case about whether certain – about whether state law wrongful death causes of action for loss of consortium and other things are or are not preempted by the receipt, the acceptance of the death benefit under Paragraph 2 here? Yeah, I would be reluctant to say what the department's – the government position is on that. My understanding, though, basically is that the – it's what the statute provides in the statutory scheme here, so that we're not incorporating state law principles as a rule. We're just asking the court to apply the statute in the terms that the statute lays out. We think that the best – and under – The government has not gone on record. It didn't – I don't think it's participated in Hobart or Schaeffer. Because that's an avenue that at least, if it is as available as Schaeffer and Hobart suggest, might bear on the presiding judge's question about the additional uncompensated losses of parents. Yes, I could – actually, I couldn't speak to that. Well, I mean, the petitioner doesn't have to accept the award. I mean, in this particular case, there's been an acceptance of the death benefit award. But if – let's assume that after this case is decided going forward, and let's assume that we adopted the interpretation statute that you suggest with regard to future loss earnings, and someone says, well, I think I could do better under state law. There's – they don't need to take the remedy, and they could, of course, wear that and go into state court and seek to – I mean, that avenue is open. That avenue is open, yes, Your Honor. I think what Judge Rano was asking is whether or not you had a position on whether or not an avenue was closed once you've accepted the award in the vaccine system. But that's personal to this case. So I didn't understand. But, I mean, going forward in the future, I mean, there are instances in which people don't – they decline the award that's been given in the vaccine system and elect to go back into the tort system. Yes, and that is true, and it is possible in other cases going forward that somebody might decide not to elect the award that's made. All right. We've sort of taken you off target here, and now you're way into your rebuttal time. So we'll restore some of it, but we need to let your friend on the other side have some say. Thank you. Elias' estate was properly awarded compensation for his impaired earning capacity, and this result is supported by the plain language of the Vaccine Act, binding precedent, and congressional intent. The plain language, as I stated, is unambiguous. It states that compensation shall be available to any person who has sustained a vaccine injury, where it's shown that the injury is of sufficient severity to impair earning capacity at age 18 and beyond. The phrase reasonable anticipation in 50A3B relates to the severity of the injury, not whether a petitioner will actually survive to age 18. So the contemplation is that you're not going to lose any earnings until you're 18, but you're saying that we should sort of just create this fiction and just assume even when the child dies that they will live to 18. Well, the statute is compensated for a loss of his earning capacity, and that's different than an actual loss of earnings. So by putting the phrase actual loss of earnings into the statute, it's putting in a concept that Congress didn't actually envision. They're trying to compensate the present loss of the capacity to earn in the future. But is the contemplation that the victim would be compensated for loss of earnings or that the victim's estate would be compensated for loss of earnings? The victim's estate. And that's supported by the beholden institution that states that all compensation in 50A1, 3, and 4 shall be available to the estate of a deceased petitioner in addition to the death benefit. So nothing in the statute actually says that the death benefit supplants any other items of compensation in 15A, including 15A3B. And there's nothing in the text of 15A3B that makes the beholden institution inapplicable to that particular section. You make the argument about the fairness or unfairness of whether or not if someone survives one additional day before the judgment or after the judgment. If there is someone who receives a judgment and then dies a day later, there is no mechanism for that individual's family to file a claim for a death benefit. Isn't that right? That's correct. So the only way you can get a death benefit is if, in fact, the death occurs prior to judgment. Correct. Does that lend support for the government's argument that the death benefit is an alternative to lost earnings? It's not in the sense that you get to pick either or, but that they contemplate that you're in one status or another as of the date of judgment. I don't believe it is. First and foremost, the plain language states that you should be entitled to all the compensation for under 15A1, 3, and 4, in addition to the death benefit. So it plainly states that you're entitled to both where you've passed away. Also, if we were to look at traditional tort action for somebody's death, the estate would be entitled to compensation for that individual's impaired inner capacity. And, as you stated, also some compensation for loss of consortium. So I think it's... Can I just ask you about the background law, which, I guess, as I read some of the material cited by the two sides, the Stein treatise and the Spicer treatise and the restatement, correct me if I'm wrong, my impression was that, although the laws vary somewhat, there is one very common view, probably the predominant view, that says you have what survives in terms of survival statutes, in terms of lost future earnings, is that the earnings stop at death. And then separately in wrongful death statutes, the petitioners who are allowed to file for wrongful death can get certain things, but that the survival actions, in fact, cut off the lost earnings at what has already accrued. Is that wrong? I think the way that I look at it is in a particular statutory scheme, the survival action and the wrongful death action are combined to provide full relief. And there's actually some statutory schemes that have a combined survival and wrongful death action. So in that way, the estate is getting full compensation. But then if that's a kind of background law, then why isn't it quite natural to read Paragraph 3 as essentially doing what survival actions do? Death cuts off the lost earnings. Paragraph 2 says here to the estate is a lump sum automatic $250,000. And then maybe under cases like Schaeffer and Hobart, there is a remaining possibility of a state law wrongful death action by surviving spouses or surviving parents or that small class of people who are generally entitled to bring wrongful death actions. Why isn't that essentially a natural reading of how 3 and 2 go together? Well, I read the Vaccine Act. First of all, the Vaccine Act would be an alternative to the state statutory scheme. It's not designed to be a substitute. It's an alternative forum. And the Congress's purpose was twofold to protect vaccine manufacturers from civil liability to stabilize the vaccine market and also to provide generous compensation to petitioners. And by disallowing compensation for impaired earning capacity to the estate, they're actually undermining both of those purposes. So Congress's intent, in my view, is that their intent was to provide complete relief to living and deceased petitioners. And by disallowing compensation for impaired earning capacity to a deceased petitioner who dies before judgment, you're actually penalizing those petitioners with more severe injuries. Do you agree with Mr. Robinson that if you go back in time, that historically when the death benefit was originally established, that it actually was somewhat in parity with what the future earnings calculation would have been, and it's only the sort of economic changes that have increased that future earnings calculation and that the real problem, if you think there's an unfairness here, is that the death benefit should be increased, that Congress should go back in and recognize that the death benefit is too low? I think at the time Edgar was decided, there were probably a closer amount of compensation. But again, the plain language of the statute nowhere says that the death benefit is a substitute for compensation for impaired earning capacity. And if that same petitioner had the same injury as in Figueroa, and by individual circumstance died a day after the judgment, then he would receive much more compensation than just the death benefit, as opposed to if he were to die prior to the judgment. You cite, I don't even know how to pronounce it, Zatucchi? Is that how you pronounce it? Zatucci. Zatucci. And you say that that, well, you cite it in support of your position, but as Judge Clevenger previously pointed out, that really only never talked about the issue of future earnings. In that case, the only thing that was at issue was the prior earnings that occurred prior to death. Isn't that right? That's true. Okay. That's true. But the reasoning still is applicable to this case. It says that all compensation under 15A1, 3, and 4, in addition to the death benefit, shall be available to deceased and living petitioners. I and my law clerks did as much research as we thought we possibly could in this case, and we were unable to find any case in which future lost earnings had been awarded to an estate on behalf of a petitioner that was deceased at the time of judgment. And I assume you haven't found any case, but you cited it. That's correct. So this is a case of first impression. Correct. And if you take together the Holdings Institution, Edgar, and Figueroa, they really embody some core principles that are important to the issue before the court right now. First, the plain language of the Vaccine Act dictates that compensation under Section 15A1, 3, and 4 shall be available to the estate of a deceased petitioner in addition to the death benefit. Secondly, 15A3b describes the method of housing the estate. And that's the question of whether or not you have to be alive at the time of judgment. Correct. I mean, you've several times have said the plain language, the plain language, the plain language. But I mean, if the plain language were as plain as the presiding judge suggested it could have been on behalf of the Secretary's side, it could be equally plain on behalf of yours. So we have an interpretation case, correct? Yes. And I believe under Figueroa, just using the date of judgment as a demarcation for whether you're going to be in the sense that it treats similar petitioners differently. It also treats those petitioners with the most severe injuries unfairly. And it also… Except that there's paragraph 2, right? So there's a death benefit in one case. So what's not available under paragraph 3 in the case of death is available under paragraph 2. And so it's not quite like Figueroa where the death was not vaccine caused and therefore it went from positive to zero. That's correct. It would be entitled to the death benefit. However, the more severely injured petitioner that dies before judgment would only get the death benefit. The maybe slightly less severely injured petitioner who dies just shortly after judgment would get a much greater… How do you know if that's more severe or less severe? Excuse me? Just because the sequela is worse? I mean, you've said this several times, but I was having trouble understanding as a matter of medicine why it's necessarily more severe or less severe depending on whether you die one day before or day after judgment. Well, it could be the same severity. All these cases are very severe, right? Many of them are. And, you know, it is just based on an unfortunate individual circumstance that your death happened prior to the judgment in your particular case or after judgment. And it unfairly treats those petitioners differently who died prior to judgment even if they have the exact same… Treats you differently if your injury is before you're 18 or after you're 18. And also… So, I mean, that distinction which I brought up earlier is in the statute as well. I mean, the fundamental provision has this line drawing. Right, right. And also in Edgar, Edgar stated that nothing in the structure of the act permitted compensation to be contingent on the petitioner reaching age 18. And they also… The holding in Edgar also stated that compensation should not be based on the post-injury life of the petitioner. It should be based on the pre-injury life of the petitioner. And using the respondent's interpretation, if you're disallowing an award for impaired earning capacity because the petitioner died before judgment, you're basing that disallowance on his post-injury life. If it weren't for his vaccine injury, it can be assumed that he would live a long and healthy life. And it's only because of the vaccine injury that he died how and when he did. So, by disallowing an award of compensation of 15A3B because he died before judgment, it's actually… You're not basing the award on the pre-injury life as the court held in Edgar. It's… Before you finish up, you want to address McAllister and how you deal with the fact that we have said that you are supposed to take into account as of the time of judgment the actual circumstances or any change in circumstances? Sure. And I believe our position is completely consistent with Section 13B1 and also the holding in McAllister. That changes in the victim's condition up until judgment should be taken into account. A vaccine-related death is a sequela of the preceding vaccine injury. And this is supported by the text in the structure of the vaccine injury table, which is Section 14 of the Vaccine Act, which consistently identifies death as a sequela of a vaccine injury. So, by treating Elias' death as unrelated to his preceding injury, the mandate of Section 13B1 and also the holding in McAllister that the special master or court shall consider the entire record in the course of the injury, disability, illness, or condition until the date of judgment would not be recognized. So, because Elias' death is a sequela of his vaccine injury, it is relevant to the severity of his injury in the 15A3B analysis. So, I believe our position is completely consistent with McAllister and Section 13B1. Okay. Anything else? All right. Thank you. Mr. Robinson, we'll restore some of your rebuttal. We'll give you three minutes. Thank you, Your Honor. I just want to make two quick points. And the first is, what is the purpose of the award for a loss of earning capacity? Given the compensatory scheme and compensatory aim of the Vaccine Act, it really is to pay for the future expenses that the person who is injured is likely to suffer. And here, the award of future loss earnings is not going to go to pay for the actual day-to-day expenses of that individual. They're going, again, as a death benefit to the parents and survivors and the estate of the individual. So, you're saying that, again, it's somewhat of a fiction. Instead of doing the calculations that you do in a normal tort setting where you have someone come in and calculate how much it's going to cost to support this person going forward for their medical needs, we just cut that out and do this calculation? Correct, Your Honor. The other thing is that, in terms of looking at the interpretation that the Secretary has proffered in this case, to the extent that it is a plausible interpretation, I think this Court has recognized under the Marathon Oil Principle that if it's plausible, then sovereign immunity dictates that the Secretary's interpretation be given precedence that it be relied on. I would like to say… I have some problems with that sovereign immunity argument. I've seen it before, but this money is coming from the companies that make these vaccines. We're not talking about tax dollars here. No, but in similar cases it has been when the government collects money for a particular purpose and then has to distribute it. Those principles of sovereign immunity have been found to apply in those circumstances, and they should apply in this case. Can I just ask, on that point, how does the statute work? If for some reason the vaccine companies didn't pay money, would the claims still proceed so that the government would have to pay them, or would the government say, sorry, we haven't got the money from the source that we were supposed to? We can't award you anything? If the government stopped collecting money from… I would assume that… and the statute did not lapse, I think that it would come out of the Treasury. I understand that mechanically it does come out of the Treasury. You're giving that argument up? Pardon? You're giving that argument up for the future day when the fund is empty? I'm… You're not going to stand up in front of us and say we don't have any money? There's a lot of money in the fund right now. There is not a lot of money. You're not too worried about it. I'm sorry, can I ask you one other question, which I think may have some bearing on your point about the purpose of the award really not being… of the Paragraph 3 awards? Can you explain what subsection D is doing in saying, except with respect to compensations under Paragraphs 2 and 3, we exclude compensation for health, education, and welfare? What is Paragraph… Yeah. Let me just see if I can… Is there any implication of relevance to that except clause? We're talking about section… Subsection D. So types of compensation prohibited? Yeah. It may not include punity or exemplary damages and then it says except with respect to yada, yada, yada. John, I'm not sure how that just figures into the analysis. And it may not. I was thinking about it partly because I just found it mysterious why one would have that provision, but then it seemed maybe it had something to do with the idea that the lost earnings are supposed to enable self-support, a form of welfare, and they didn't want any arguments about how lost earnings, if for that purpose, were somehow prohibited by this, so you put the except clause in. But I realize this is several steps away from where I started, which is I don't know what this provision means. I just wanted to make one last point, and that is that the Secretary's interpretation is consistent with the way in which, again, survival and wrongful death actions seem to play out in most jurisdictions. As the Sarver Court noted, in most jurisdictions, a wrongful death action does not encompass a claim for decedent's loss of earnings. And in a survival action, a claim for lost earnings embraces only the earnings lost up to the time of death. And I think that's consistent with the position we're advocating. You might be able to get, under a wrongful death statute, you might be able to get future lost earnings in some jurisdictions. In some jurisdictions where it's provided by statute as a provision. Correct. Part of the consequences of the wrongfulness of the death, right, in those jurisdictions. In those jurisdictions where it's provided by statute. Thank you. I do want to say that despite some lighthearted exchanges about the arbitrariness of the statute, we understand that these cases are always extraordinarily serious, and the facts are always extraordinarily sad. And it makes it difficult for the decision making. Well, I certainly didn't mean to be pejorative, but I mean, you know what our law is with regard to the statute of limitations. And, you know, three years, you know, it's cut and dry. That's an arbitrary date that was selected for time and filing of your petition. Congress made these choices. All right. Thank you all. The case is submitted.